**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CHARLES MURRAY, Petitioner, | : | Civil Action No. 09-4347 (NLH) |
| v. | : | **OPINION** |
| FEDERAL BUREAU OF PRISONS, Respondent. | : | |

**APPEARANCES:**

Petitioner pro se
Charles Murray
FCI - Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640

Counsel for Respondent
Karen Helene Shelton
Asst. U.S. Attorney
402 East State Street
Trenton, NJ 08608

**HILLMAN**, District Judge

Petitioner Charles Murray, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] challenging the results of a prison disciplinary

[1] United States Code Title 28, Section 2241, provides in pertinent part:

> (a) Writs of habeas corpus may be granted by the ... district courts ... within their respective jurisdictions ...
> (c) The writ of habeas corpus shall not extend to a prisoner unless- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

proceeding. The sole named respondent is the Federal Bureau of Prisons.

For the reasons set forth below, the Petition will be denied.

## I. BACKGROUND

Petitioner Charles Murray is a federal prisoner currently confined pursuant to convictions in this Court and the U.S. District Court for the Eastern District of Pennsylvania. See United States v. Murray, Criminal No. 04-0207 (D.N.J.); United States v. Murray, Criminal No. 04-0666 (E.D.Pa.). Petitioner's anticipated release date is July 3, 2010.

Incident Report No. 1854375

On April 1, 2009, Petitioner met with Ms. Ordonez regarding his potential future transfer to a Residential Reentry Center. In that meeting, Ms. Ordonez reviewed with Petitioner the form Community Based Program Agreement, BP-0434. Petitioner had some concerns about Paragraph 2, which read:

> I understand that while a resident of a residential reentry center or work release program I will be expected to contribute to the cost of my residence through payments to the contractor and I agree to make such payments. I understand that failure to make payments may result in my removal from a community-based program.

Despite Petitioner's concerns, both he and Ms. Ordonez signed the Agreement. Petitioner took the signed agreement to review further.

On April 8, 2009, Petitioner met again with Ms. Ordonez, presenting her with two altered documents. On the first, next to his signature, Petitioner had typed, "with reservation of all rights." On the second, Petitioner had typed a notation on the heading "as amended" and had typed a revised Paragraph 2:

> I understand that while a resident of a residential reentry center or work release program I will be expected to contribute to the cost of my residence through payments to the contractor and I agree to make such payments only when authorized under statutory law or code of federal regulations.

This second document was an altered photocopy of the original Agreement. Petitioner states that he explained the "amendment" to Ms. Ordonez, but that she told him he had forged a document and that he could be subject to an incident report.

On April 8, 2009, Petitioner was issued Incident Report Number 1854375, which charged him with violations of prohibited act 298 (Interfering w/Staff in the Performance of Duties) and prohibited act 314 (Counterfeiting or Forging any Documentation, Article of Identification, Money or Official Paper), as follows:

> On 04-08-2009, at approximately 11:00 AM, inmate MURRAY, CHARLES #40775-050 approached my office with two altered BP-0434 Community Based Program Agreements. Previously, on April 1, 2009, inmate Murray was asked to review the BP-0434 Community Based Program Agreement before signing. Inmate MURRAY, CHARLES #40775-050 took the said documentation and sometime before approaching my office on 04-08-2009 altered the documents. Specifically, inmate MURRAY, CHARLES #40775-050 altered paragraph #2 (see attached), after a staff signature was issued; which created the appearance that staff had agreed to the conditions of the document under inmate MURRAY'S, CHARLES #40775-050 altered terms. On another

> BP-0434 Community Based Program Agreement, inmate MURRAY, CHARLES #40775-050, used white-out and typed in additional comments, after a staff signature was issued; which also created the appearance that staff had agreed to the conditions of the document under inmate MURRAY'S, CHARLES #40775-050 altered terms. Inmate MURRAY, CHARLES #40775-050 was counseled on the seriousness of altering official documentation with staff signatures and advised that due to the serious implications of falsely using a staff member's signature to facilitate his legal endeavors, he would be issued an incident report accordingly.

(Incident Report No. 1854375, ¶ 11.) When asked if he would like to make a statement, he said, "I did change that document but not with the intent to deceive." (Id. at ¶ 24.)

An initial hearing was held before the Unit Discipline Committee on April 10, 2009. Petitioner made the following statement, as summarized on the Incident Report.

> Inmate Murray, Charles #40775-050 explained he understood his rights on 04-10-2009, at 8:25 am. Inmate Murray made the following statements regarding the Incident Report: On 03-21-2009, the reporting employee (Ms. Ordonez) told him to come down and see her on 04-01-2009, to provide him with a copy of the Community Based Program Agreement (BP-0434). He always reads documents before he signs any paperwork. On 04-01-2009, at approximately 8:00 am, the reporting employee gave him a relocation document, which he reviewed and signed (because he understood it was correct), in her presence. The reporting employee handed Murray a BP-0434, which he reviewed and expressed a concern with the second paragraph, and then was instructed to review the document further, and bring it back to the reporting employee. During the next week, Murray reviewed relevant policy and law, and he determined that the second paragraph was not in compliance with applicable law. He explained he used "white-out" on a segment of the second paragraph, and replaced it with a "counter offer" within statutory law and code. On 04-08-2009, at approximately 8 am, he handed the BP-0434 back to the reporting employee,

> specifically telling her that "...the only way I'm going to sign this form is with this counter offer, as amended." He claims the reporting employee asked him 'what' did he do that for, and 'why' would he alter the document. He then explained to the reporting employee, that he submits the relevant document with "full disclosure" and with "no deceit", without his signature. He clarified that his altering of the BP-0434 was not mean to be fraud.
>
> He also wanted to state that he was informed by the reporting employee and the Unit Manager (Ms. Knox), that he would not go to a Residential Reentry Center (RRC) if he did not sign the BP-0434.

(Incident Report No. 1854375, ¶ 17.) The UDC referred the incident to the Disciplinary Hearing Officer.

The DHO hearing took place on April 28, 2009. Petitioner had requested a staff representative, who appeared in the person of Dr. Kotch, and two witnesses, who were not called.[2] The DHO Report summarizes Petitioner's statement as follows:

> Inmate MURRAY, CHARLES F register number 40775-050 was read his rights before the DHO advised he understood his rights as read. He was read the body of the incident report and made the following statement; "The unit team area was open. I asked Ms. Ordonez about the half way house time. She said she would give it a couple of months time, that was on March 31. I was in staff alley a little while after that. She said I have stuff for you to review. On April 1, 2009 Mr. Baptiste was there. Ms. O reviewed the release declaration and I signed in her presence. She handed me the BP-0434 form and told me to review it and get back to her. I told her I don't agree with paragraph 2. She said you

[2] Petitioner requested as witnesses: (1) a Mr. Batiste who could allegedly testify "that on 3-31-09, he was present when Ms. Ordonez gave me the form (BP-0434) to review," and (2) Unit Manager Knox could allegedly testify "that on 4-3-09, that I approached her at Main Line, and spoke to her about signing the BP-0434." (Notice of Discipline Haring Before the (DHO)."

> have to sign this form to get the half way house. I made the counter. I don't deny altering it. When I went into her office on April 8, 2009. She said I always have time for you.
>
> The DHO asked "How did you copy this?" He said "I typed it up and used the copier and shrunk it down. It turned out better than I thought."

(DHO Report on Incident Report No 1854375, § III.B.) The Staff Representative's statement was summarized as "He did put 'Amended'. I don't think it was done with malice or deceit. He was making a statement. Though this is not the way to go about that."

The DHO found that Petitioner had committed prohibited act 314.

> I find that on or about April 8, 2009, at 11:00 AM, you did commit the prohibited act of possession of a forged document, in the Federal Correctional Institution, Fort Dix, New Jersey.
>
> This decision is based on the [] greater weight of evidence provided before me which is documented in the written report provided by the reporting employee. The employee documented,
>
> > "On 04-08-2009, at approximately 11:00 AM, inmate MURRAY, CHARLES #40775-050 approached my office with two altered BP-0434 Community Based Program Agreements. Previously, on April 1, 2009, was asked to review the BP-0434 Community Based Program Agreement before signing. Inmate Murray, CHARLES #40775-050 took the said documentation and sometime before approaching my office on 04-8-2009 altered the documents. Specifically, inmate MURRAY, CHARLES #40775-050 altered paragraph #2 (see attached), after a staff signature was issued; which created the appearance that staff had agreed to the conditions of the document under inmate MURRAY'S, CHARLES #40775-050 altered terms. On another BP-0434 Community Based Program

> Agreement, inmate MURRAY, CHARLES #40775-050, used white-out and typed in addition comments, after a staff signature was issued; which also created the appearance that staff had agreed to the conditions of the document under inmate MURRAY'S, CHARLES #40775-050 altered terms.  Inmate MURRAY, CHARLES #40775-050 was counseled on the seriousness of altering official documentation with staff signatures and advised that due to the serious implications of falsely using a staff members signature to facilitate his legal endeavors, he would be issued an incident report accordingly."
>
> ...
>
> VII. REASON FOR SANCTION OR ACTION TAKEN
>
> The action on the part of any inmate to Forge or Make Unauthorized Reproduction of any Document poses a serious threat to the security of the institution as well as the safety of the inmate(s) involved.  This type of behavior threatens the ability of the staff and institution to properly account for the inmates whereabouts at all times.  This behavior can not and will not be tolerated from any inmate.  The sanction(s) imposed by the DHO were taken to let the inmate know that he, and he alone will be held responsible for his actions/behavior at all times.

(DHO Report at §§ V, VII.)  The DHO imposed sanctions including 13 days' loss of good conduct time.  A copy of the DHO report was delivered to Petitioner on May 6, 2009.

Petitioner asserts that he requested BP-10 appeal forms from Unit Manager Knox on May 6, May 13, and May 15, 2009, but that Unit Manager Knox did not give him the BP-10 appeal form until May 18, 2009.  Petitioner states that he completed the BP-10 form and attachment page by May 19, 2009, but that institution copiers were inoperable until May 22, when he made the required copies

and put the envelope containing his appeal papers in the Unit Special Mail binder.

The appeal papers were received by the Regional Office of the Bureau of Prisons on May 28, 2009, and were rejected as untimely. Petitioner then filed two administrative remedy appeals with the Central Office, which were received on June 22, 2009, and which were rejected for being untimely at the Regional Office level.

on September 30, 2009, after this action was filed, the DHO issued an amended DHO Report, in which the DHO stated that the requested witnesses were not called because, "The witnesses would not have provided favorable statements. The inmate does not deny doing the act only gives his mitigating circumstances for doing it." (Amended DHO Report, § C.3.) The amended DHO Report was delivered to Petitioner on October 1, 2009. The parties have not advised the Court whether Petitioner attempted to appeal the amended DHO Report.

Incident Report No. 1854960

Also on April 8, 2009, at 3:00 p.m., Petitioner was issued Incident Report No. 1854960, which charged a violation of prohibited act 305 (Possession of Anything Not Authorized) and a violation of prohibited act 407 (Possession of Another's Property), as follows:

> Description Of Incident (Date: 04-08-09 Time: 3PM Staff became aware of incident)  On 04-08-09 in Building 5702

> AT APPROXIMATELY 3PM. THE PROPERTY OF INMATE MURRAY 40775-050 WAS SECURED AND PACKED OUT. DISCOVERED INSIDE THE INMATES PERSONAL PROPERTY WAS LEGAL WORKING BELONGING TO OTHER INMATES. ALSO RECOVERED WERE TAX FORMS AND A BOOK ON TAXES.

(Incident Report No. 1854960, ¶ 11.) Petitioner's comments in response to the Incident Report were summarized as "It was Inmate Santos-Flores property. I have been helping him for approximately 2 months. I have had many of his legal documents in his presence, but I never keep them. The only thing I had was my work product, 21 pages which I wrote. It belongs to me." (Incident Report No. 1854960, ¶ 17.)

On April 14, 2009, the Unit Disciplinary Committee referred this matter to the DHO for hearing. The DHO Hearing was held on April 28, 2009. Again, Dr. Kotch appeared as Petitioner's staff representative. Petitioner did not request any witnesses.

Petitioner's statement to the DHO is summarized as follows:

> The tax forms and property and package they found was my work product doing legal work on SANTOS-FLORES that I was working on for a month. Although I have reviewed his work [none] of the other stuff is in my possession. There was a 2255 that I was completing for him. He was going to take my copies and make copies for court. What I had was everything I typed. It was separate from the other stuff. SANTOS got a FEDEX envelope that still had his name on the billing slip. I asked him for it. I said let me keep the envelope with my stuff and the stuff I was doing for him.

(DHO Report § III.B.)

The DHO found as follows:

> I find that on or about April 8, 2009, at 3:00 p.m., you did commit the prohibited act of possession of

> anything not authorized, in the Federal Correctional Institution, Fort Dix, New Jersey.
>
> This decision is based on the greater weight of evidence provided before me which is documented in the written report provided by the reporting employee. The employee documented,
>
> > "On 04-08-2009, in building 5702 at approximately 3pm. The property of inmate MURRAY 40775-050 was secured and packed out. Discovered inside the inmates personal property was legal working belonging to other inmates. Also recovered were tax forms and a book on taxes."
>
> The DHO took into consideration your statements, specifically, "SANTOS got a FEDEX envelope that still had his name on the billing slip. I asked him for it. I said let me keep the envelope with my stuff and the stuff I was doing for him." as supporting the incident report as written.
>
> Based upon the greater weight of evidence provided before me, your actions are consistent with a violation of Code 305, Possession of Anything Not authorized.

(DHO Report § V.) The DHO imposed sanctions including a disallowance of seven days good conduct time. The DHO stated the reasons for the sanctions as follows:

> The behavior on the part of any inmate to have possession of anything which is not authorized interferes with the staffs ability to account for all inmate property and perform proper shakedowns of the inmate's assigned area. Unauthorized items can be used for illegal purposes, drugs and/or intoxicants and, therefore, cannot and will not be tolerated.
>
> Disciplinary segregation, concurrently, Disallowance of Good Conduct Time, and the loss of visits, is meant to demonstrate the seriousness of the offenses to you as well as everyone incarcerated at this facility.

(DHO Report § VII.)

This DHO Report was also delivered to Petitioner on May 6, 2009, and he attempted to appeal this decision together with his appeal of the decision on Incident Report 1854375. The appeal of this DHO decision was also rejected as untimely.

Here, Petitioner argues that there is insufficient evidence to support the DHO's findings of guilt on both incident reports. In the alternative, Petitioner requests that this Court find that the appeals were timely filed and remand this matter back to the Regional Office for consideration of the appeals on the merits.

The Respondent contends that the Petition should be dismissed for failure to exhaust administrative remedies and, in the alternative, that the Petition should be denied on the merits.

## II. LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified." See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle

v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

## III. ANALYSIS

### A. Jurisdiction

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997). See also Wilkinson v. Dotson, 125 S.Ct. 1242 (2005).

### B. Exhaustion of Administrative Remedies

Respondent asks this Court to dismiss the Petition as unexhausted.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted

all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In general, the BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in

institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."[3] 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.[4] Id. Appeal to the General Counsel is the final administrative appeal. Id. If responses are not received by the inmate within the time allotted

[3] "This rule does not require the inmate to file under the Administrative Remedy Program before filing under statutorily-mandated procedures for tort claims (see 28 CFR 543, subpart C), Inmate Accident Compensation claims(28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D),[ or other statutorily-mandated administrative procedures]." 67 F.R. 50804-01, 2002 WL 1789480 (August 6, 2002).

[4] Response times for each level of review are set forth in 28 C.F.R. § 542.18.

for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

Disciplinary Hearing Officer (DHO) appeals are submitted directly to the Regional Director. See 28 C.F.R. § 542.14(d)(2). Therefore, DHO appeals involve fewer levels of review in order to be considered "exhausted."

Here, Respondent has presented no evidence to rebut Petitioner's sworn statement that he requested the appeal form on multiple occasions before he received it twelve days into his twenty-day appeal period. Nor is the Court persuaded by Respondent's suggestion that Petitioner could have submitted his appeal without the form. To the contrary, the BOP regulations specifically require that "Appeals to the Regional Director shall be submitted on the form designed for regional Appeals (BP-10) ... ."

As the record is complete, and the goals of exhaustion would not otherwise be impaired by proceeding here, the Court will excuse Petitioner's failure to exhaust his administrative remedies.

C. Petitioner's Claims

Petitioner asserts that there is insufficient evidence to support the DHO's findings of guilt with respect to both Incident Reports.

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971). Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ... In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[5] "the prisoner's interest has real substance and is

[5] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison. Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive

sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

Thus, a prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and presented documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals,[6] and (3) a written

---

credit toward the service of their sentence based upon their conduct. See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

[6] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing. To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing. See Ponte v. Real, 471 U.S. 491 (1985). "{P]rison officials may deny a prisoner's request to

statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. Id. at 569-70. Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member. Id. at 570.

In addition, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985).[7]

Finally, the "harmless error" rule applies to federal court review of prison disciplinary actions. See Elkin v. Fauver, 969

---

call a witness in order to further prison security and correctional goals. ... [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners." Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985).

[7] The due process requirements of Wolff, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq. See, e.g., 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

F.2d 48 (3d Cir.), cert. denied, 506 U.S. 977 (1992); Powell v. Coughlin, 953 F.2d 744 (2d Cir. 1991); Pressley v. Blaine, 544 F.Supp.2d 446, 457 (W.D. Pa. 2008).

Here, Petitioner unquestionably received due process in his disciplinary proceedings. Petitioner does not suggest that the DHO was not impartial. Petitioner received timely written notice of the charges, he had the opportunity to call witnesses and present evidence in his defense, and he received a written statement as to the DHO's findings. The findings of the DHO are supported by "some evidence" in the record. Accordingly, Petitioner is not entitled to relief here.

## IV. CONCLUSION

For the reasons set forth above, the Petition will be denied. An appropriate order follows.

At Camden, New Jersey

/s/ NOEL L. HILLMAN
Noel L. Hillman
United States District Judge

Dated: JUNE 23, 2010